## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**CHRISTOPHER DYAL**
**DOC# 958733,**

      **Plaintiff,**

**v.**                                     **Case No.: 3:17-cv-1284-TJC-JBT**

**CARDIGAN, ET AL.,**

      **Defendants.**

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    **Thomas Oliver** and **Charles Cardigan, Jr.** ("Defendants" or individually by name), through counsel, hereby move for Summary Judgment in their favor pursuant to Rule 56, Fed. R. Civ. P., allege the following in support thereof:

**I.**       **Defendants are entitled to Qualified Immunity on some of Plaintiff's claims.**

**II.**     **Plaintiff fails to state a claim against Defendants.**

**III.**    **Plaintiff is not entitled to compensatory or punitive damages.**

## PLAINTIFF'S CLAIMS AND PROCEDURAL HISTORY

    On April 26, 2018 Plaintiff filed his Amended Complaint with this Court. *See* (Doc. 9).[1] Based on Plaintiff's Amended Complaint, Defendants filed an Answer. (Docs. 16). Based on Defendants' Answers, this Court issued a Scheduling Order. *See* (Doc. 17). The Scheduling Order was later extended twice, *see* (Docs. 31, 36), with the due date for Motions for Summary Judgment being April 15, 2019. *See* (Doc. 36 at ¶ a). On April 15, 2019, Defendants filed their Motion for Summary Judgment. (Doc. 51). After review of Defendants' Motion for Summary

---

[1] Each document filed in this case as part of the Electronic Case File will be referenced as "Doc." followed by the document number.

Judgment, this Court struck the pleading without prejudice, and required Defendants to file their Motion with signed declarations by May 30, 2019. *See* (Doc. 53 at ¶ 7).

## STATEMENT OF MATERIAL FACTS

Christopher Dyal ("Plaintiff"), is proceeding *pro se* and is a prisoner in the custody of the Florida Department of Corrections ("FDOC") currently housed at Lake Correctional Institution. *See* (Defendants' Exhibit A). Plaintiff's allegations relate to his conditions of confinement dealing more specifically with the painting of his dorm and later transfer to a different institution. (Doc. 17 *generally*).

During the month of March 2017, while Plaintiff was at Putnam Correctional Institution, Defendant Cardigan was tasked with painting Plaintiff's dorm. (Doc. 9 at 14-15; Defendants' Exhibit B). The painting process took place during a possible recreation or work time for the inmates in Plaintiff's dorm, and Defendant Cardigan told the inmates that they could leave the dorm if they desired to do so. (Doc. 9 at 14-15; Defendants' Exhibits B, F). In preparation for the painting, Defendant moved all the inmates' beds and property out of the way, placed down old used sheets on the floor, and utilized a powered paint sprayer to complete the task. (Defendants' Exhibits B, F).

Prior to beginning the spray-painting process, Plaintiff indicated that he did not desire to leave, and remained in the dorm during the process. (Defendants' Exhibit B). After the painting began, Plaintiff approached Defendant Cardigan and complained about the smell of the paint. (Doc. 9 at ¶ 6; Defendants' Exhibits B, F). Based on Plaintiff's statements, Defendant Cardigan spoke with the Major at the facility who instructed him to continue painting. (Defendants' Exhibits B, F). Defendant Cardigan then continued to paint the dorm as instructed, and no further issues occurred. (Defendants' Exhibits B, F). The next day, Defendant Cardigan was setting up

to begin painting again when his Major approached him and instructed him to cease painting. (Defendants' Exhibit B). Based on his Major's instructions, Defendant Cardigan did not paint any further. (Defendants' Exhibit B).

Plaintiff was later transferred to a different institution. (Doc. 9 at ¶ 17; Defendants' Exhibits C, F). Neither Defendants Oliver or Cardigan provided any input on Plaintiff's transfer. (Defendants' Exhibits B, D). Since Plaintiff's transfer, he has not returned to Putnam Correctional Institution. (Defendants' Exhibit F). *See also* (Defendants' Exhibit C).

## **MEMORANDUM OF LAW**

### **Standard for Summary Judgment**

Summary Judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for Summary Judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. Upon meeting this burden, the burden shifts to the nonmoving party to present evidentiary material demonstrating that a genuine issue of material fact exists. *Id*.

Applicable substantive law identifies those facts that are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are 'implausible.' *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252. *See also Matsushita*, 475 U.S. at 587 (there is no genuine issue for trial if record taken as a whole would not lead a rational trier of fact to find in favor of non-moving party). In other words, Summary Judgment is warranted against a nonmoving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To create an issue of fact for trial sufficient to defeat a well-supported Summary Judgment motion, the non-movant's evidentiary material must consist of more than conclusory, uncorroborated allegations from an affidavit. *West v. Higgins*, 346 F. App'x 423, 425 (11th Cir. 2009) (per curiam) (unreported op.) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). For the factual issues to be genuine, they must have a real basis in the record, cannot be based merely on "information and belief" or unsupported factual allegations. *Earley*, 907 F.2d at 1081. Further, if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of Summary Judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). *See also* Rule 56(c), Fed. R. Civ. P.

4

In *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), the Eleventh Circuit clarified its earlier rulings on this point by indicating that their cases applying *Celotex* read *Celotex* "as simply allowing *otherwise admissible evidence* to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." The Court continues to apply this principle. *See McCaskill v. Ray*, 279 Fed.Appx. 913, 914 (11th Cir. 2008). However, the court was clear that "potential impeachment evidence [although admissible] . . . may not be used to create a genuine issue of material fact for trial" that would defeat a Motion for Summary Judgment. *McMillian*, 88 F.3d at 1584.

## I.      Defendants are entitled to Qualified Immunity on some of Plaintiff's claims.

In this case, it is clear Defendants are entitled to Qualified Immunity on Plaintiff's Constitutional claims and should be dismissed from further litigation in this case with regard to Plaintiff's constitutional claims. Defendants are entitled to Qualified Immunity as they did not violate Plaintiff's constitutional rights, and further, Defendants did not violate any "clearly established law."

Qualified Immunity offers complete protection for government officials sued in their individual capacities who act within their discretionary authority. *Pearson v. Callahan*, 555 U.S. 223 (2009). Officials are entitled to Qualified Immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (January 22, 2018) (citing *Reichie*, 566 U.S. at 664). Courts are not required to address the two prongs of this test in any particular order. *Pearson*, 555 U.S. 223.

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is

unlawful." *Wesby*, 138 S. Ct. at 589 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). *See also Santana v. Miami-Dade County*, 688 Fed. App'x 763, 770 (11th Cir. 2017) (stating that the circumstances must be viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 hindsight. [While] allow[ing] for the fact that officers are required to make 'split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in particular situation.") In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Wesby*, 138 S. Ct. at 589 (citing *al-Kidd*, 563 U.S. at 741). The "demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. "The rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *Id*. (internal citations removed). "It is not enough that the rule is suggested by then-existing precedent." *Id*. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. "Otherwise, the rule is not one that 'every reasonable official' would know." *Id*.

Furthermore, when considering a defense of Qualified Immunity, courts must only consider the facts that were knowable to the Defendant. *White v. Pauly*, 137 S. Ct. 548, 550 (2017). The United States Supreme Court has recently reversed lower courts in several decisions, and in each decision the Court has expressed the concern that clearly established law should not be defined "at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). The dispositive question is "whether the violative nature of *particular* conduct is clearly established."

*Id.* (citing *al-Kidd*, 563 U.S. 731 at 741 (2011)). *See e.g. Mullenix*, 136 S. Ct. 305 (The United States Supreme Court determined that an officer had acted reasonably under circumstances involving a clear violation of the general rule that deadly force may not be used "against a fleeing felon who does not pose a significant threat of harm to the officer or others."). "The clearly established law must be 'particularized to the facts of the case. Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 137 S. Ct. at 552.

Additionally, even if Defendants were mistaken in believing that their actions did not violate the law, Defendants still would be entitled to Qualified Immunity. In a recent Opinion issued by the United States Supreme Court, the Court overturned a decision by the DC Circuit Court which found that the officers in the case were not entitled to Qualified Immunity. *Wesby*, 138 S. Ct. 577. In the case, the Court addressed the decision by the DC Circuit[2] and specifically stated that "[e]ven assuming the officers lacked actual probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s present.'" *Id.* at 591. In making such a finding, the Court belied the fact that there was not "a single precedent – much less a controlling case or robust consensus of cases – finding a Fourth Amendment violation 'under similar circumstances.'" *Id.* And the Court went on to say that the case was not an "'obvious case' where a 'body of relevant case law' is not needed." *Id.* After making such a finding, the Court overturned a judgment of nearly $1 million against the officers. *Id.* Unless there is a "controlling or robust consensus of

---

[2] Prior to reaching the Qualified Immunity issue, a majority of the Court found that probable cause did in fact exist and that the Appellate Court had made an incorrect finding. However, even though the probable cause issue would have resolved the case, the Court specifically addressed Qualified Immunity due to the clearly erroneous ruling on the issue by the DC Circuit. *See Wesby*, 138 S. Ct. at 589.

cases" demonstrating the unlawfulness of Defendant's actions, there is no violation of clearly established law. *Wesby*, 138 S. Ct. at 591. There must be an "obvious case" which would demonstrate such a precedent. *Id*. at 591.

In this case, Plaintiff's constitutional rights have not been violated. Plaintiff's allegations are that he suffered injury based on spray painting of his dorm after he chose to remain in the dorm while the spray painting was going on, *see* (Doc. 9 at 14-15), and that a search was conducted of Plaintiff's property which violated Plaintiff's constitutional rights. *See Id*. at 17-18. Plaintiff cannot demonstrate a constitutional violation in either circumstance. Likewise, there is not an "obvious case" or a "robust consensus of cases" finding violations of Plaintiff's constitutional rights "under similar circumstances." *Wesby*, 138 S. Ct. at 591.

### A. Eighth Amendment violations based on a theory of deliberate indifference.

The Eighth Amendment imposes a duty on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of . . . inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for officials responsible for the victim's safety." *Id*. at 834. To demonstrate an Eighth Amendment violation, a deprivation must be, "objectively, 'sufficiently serious,'" as "a prison official's act or omission must result in the denial of 'the minimalized civilized measures of life's necessities.'" *Id*. An inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id*.

An inmate must also additional show that a prison official "must have a 'sufficiently culpable state of mind.'" *Id*. at 834. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. Deliberate indifference is a "state of

mind more blameworthy than negligence." *Id.* at 835. Deliberate indifference has been equated with the definition of recklessness normally applied in criminal law. *Id.* at 837. More specifically, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn and that a substantial risk of harm exists, and he must also draw the inference." *Id.* "Thus, prison officials can avoid Eighth Amendment liability by showing (1) 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefor unaware of a danger,' (2) 'that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise were insubstantial or nonexistent,' or (3) that they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* at 844. *See also Milledge v. FDOC*, __ Fed. App'x __, 2019 WL 157563, *2 (11th Cir. 2019).

In this case, Plaintiff fails to state a cause of action for deliberate indifference under the Eighth Amendment against Defendant Cardigan because he attempted to respond reasonably, even though alleged harm was not avoided to Plaintiff. Prior to beginning painting, Plaintiff was provided the opportunity to leave the dorm, but chose not to. (Defendants' Exhibit B). After Plaintiff complained of the issue related to the smell of the paint fumes, Defendant Cardigan approached his Major and informed the Major of the complaints. (Defendants' Exhibits B, F). In response to the complaints, the doors to Plaintiff's dorm were opened and painting of Plaintiff's dorm ceased the next day. (Doc. 9 at 55; Defendants' Exhibit B). Further, accepting Plaintiff's allegations regarding his transfer to a different facility as true (for purposes of this Motion only), Plaintiff was no longer exposed to the issues related to the fumes based on actions of prison

officials.[3] At most, if Plaintiff suffered his alleged injuries, Defendants' (and other prison officials') actions were merely negligent[4] and clearly do not rise to the level of criminal recklessness.

Importantly, there does not appear to be any "obvious case" or a "robust consensus of cases" finding violations of Plaintiff's constitutional rights "under similar circumstances." *Wesby*, 138 S. Ct. at 591. Defendants have not been able to locate a single case dealing with a similar situation described by Plaintiff which resulted in liability under a theory of deliberate indifference for an individual correctional officer who was painting a dorm and later alerted his superior to issues suffered by inmates. As a result, Defendant Cardigan should be entitled to Qualified Immunity as it relates to Plaintiff's deliberate indifference claims.

### B. Search of Plaintiff's property.

As it relates to searches of Plaintiff's property, *see* (Doc. 9 at 17-18), Defendant Oliver is entitled to Qualified Immunity for the search he allegedly conducted of Plaintiff's property. The United States Supreme Court has made clear that prisoners have no expectation of privacy in their property. *Hudson v. Palmer*, 468 U.S. 517 (1983). Plaintiff does not allege that Defendant Oliver damaged, destroyed, or currently possesses Plaintiff's property. Rather, it appears that Plaintiff complains about the search conducted by Oliver which allegedly resulted in Plaintiff's property being transferred ahead of Plaintiff. As prisoners have no expectation of privacy in their property, they are subject to search at any time and there can be no constitutional violation.

---

[3] It is important to note that neither Defendant had the authority to transfer Plaintiff as both individuals are corrections officers. (Defendants' Exhibits B, D).

[4] Even if Defendants were negligent, Plaintiff cannot state a claim against Defendants as they would be entitled to Sovereign Immunity, and instead would be required to bring a claim against the Secretary for the Florida Department of Corrections. § 768.28(9)(a), Fla. Stat. (2019). The Secretary for the Florida Department of Corrections is not a defendant in this case.

Moreover, there does not appear to be any "obvious case" or a "robust consensus of cases" finding violations of Plaintiff's constitutional rights "under similar circumstances." *Wesby*, 138 S. Ct. at 591. Defendants have not been able to locate a single case dealing with a similar situation described by Plaintiff which resulted in liability for an individual officer based on a mere search of an inmates' property. As a result, Defendant Cardigan should be entitled to Qualified Immunity as it relates to Plaintiff's claims related to a search of his property.

## II.     **Plaintiff fails to state a claim against Defendants.**

Plaintiff fails to state any cognizable claim which can be pursued in this Court. Plaintiff's claims may allow for a possible claim of negligence, but such a claim is not in and of itself a claim which can be pursued in this Court as anything other then a pendant jurisdictional claim. As a result, Plaintiff's Amended Complaint should be dismissed against Defendants.

### A.   **Plaintiff fails to state an Eighth Amendment claim**.

As detailed above, Plaintiff fails to state any cognizable claim under the Eighth Amendment. *See* Section I-A, *supra*. Plaintiff may state a claim for negligence, but such a claim is not cognizable in this Court. As a result, Plaintiff's Eighth Amendment claims, *see* (Doc. 9 at 14-15, 18-19), should be dismissed.

### B.   **Plaintiff fails to state a claim based on a theory of retaliation.**

Within his Amended Complaint, Plaintiff alleges that he was threatened with retaliation, and that he was transferred to a different institution in retaliation. *See* (Doc. 9 at 16-17). Neither of Plaintiff's claims demonstrate a cause of action based on the facts presented within this case. First, threats in and of themselves do not constitute a violation of an individual constitutional rights. *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) ("Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the

defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim.").

Second, Defendants did not have the ability or authority to transfer Plaintiff. Defendants were individual corrections officers who do not have the authority to unilaterally transfer an inmate. (Defendants' Exhibits B, D). The authority to transfer an inmate rests with much higher-ranking individuals at an institution or with the Florida Department of Corrections Central Office in Tallahassee. (Defendants' Exhibits B, D).

Third, there is no constitutional right to remain at or be transferred to any particular correctional institution. *Meachum v. Fano*, 427 U.S. 215 (1974). Florida courts have likewise held that the Florida Department of Corrections has complete discretion to transfer inmates and that no Florida statute places any restrictions on the transfer of state prisoners. *McNamara v. Cook*, 336 So. 2d 677 (Fla. 4th DCA 1976). The decision of where to place inmates falls squarely within the authority of the Florida Department of Corrections as a state Executive Branch Agency. As a result, even assuming that Plaintiff was transferred in retaliation as alleged by Plaintiff, he still could not state a claim for the alleged transfer.

Fourth, Plaintiff fails to meet the elements for a claim of retaliation. "An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were '*the result of* [the inmate']s having filed a grievance concerning the conditions of his imprisonment.'" *O'Bryant v. Finch*, 637 F. 3d 1207, 1212 (11th Cir. 2011) (emphasis in original). "To prevail on a retaliation claim, the inmate must establish that: '(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from

engaging in such speech; and (3) there is a causal relation ship between the retaliatory action [the disciplinary punishment and the protected speech [the grievance].'" *Id*. at 1212.

In this case, Plaintiff fails to establish the second or third prongs. As it relates to the second prong, Plaintiff explicitly alleges that despite "living in fear, [he] filed a grievance to the Secretary Dept. of Corr. Fla. that plainly stated the threats by C.O. Cardigan on 3/7/17." (Doc. 9 at 16). Plaintiff then references several exhibits attached to his Amended Complaint as evidence that he filed a grievance related to the issue. *Id*. (referencing pages 51-59 of the Amended Complaint). Clearly, Plaintiff was not deterred from exercising his desired speech and rather *continued to exercise* the allegedly violated speech.

As Plaintiff's claims relate to the third prong, Plaintiff also fails to state a cause of action. Plaintiff alleges that he was transferred as a result of his speech, however, a transfer neither demonstrates "disciplinary punishment" nor provides for a cause of action. The decision to transfer Plaintiff was not made by either Defendant and a transfer of an inmate within the Florida Department of Corrections does not invoke any constitutionally protected right. As a result, Plaintiff fails to state a cause of action for retaliation.

### C. Plaintiff fails to state a claim under the 5th or 14th Amendments.

Assuming that Plaintiff has brought claims under the First or Eighth Amendments, the 14th Amendment need not be invoked as it is commonly understood that Federal claims against the state are brought through the 14th Amendment. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266 (1994). More specifically, "if a constitutional claim is covered by a specific constitutional provision, such as

the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272, n. 7 (1997).

Likewise, in order to demonstrate a Due Process claim, an inmate must demonstrate an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" which would allow for recognition of a liberty interest. *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). The allegations presented by Plaintiff do not demonstrate an atypical and significant hardship as the painting of prison dorms is an activity which is conducted on a regular basis. *See* (Defendants' Exhibit B). As the activity is not irregular and does not create an interest which creates an atypical and significant hardship on Plaintiff, Plaintiff fails to state a cause of action.

### D. Plaintiff cannot bring a cause of action under § 633.206, Fla. Stat. (2019).

Within Plaintiff's Amended Complaint, Plaintiff attempts to bring a cause of action under section 633.206(3) of the Florida Statutes. *See* (Doc. 9 at 18). In doing so, Plaintiff states in conclusory fashion that "[P]laintiff['s] Fourteenth Amendment Civil Rights were violated by C.O. Cardigan under violation of Due Process of the laws for failure to abide by Florida Fire Prevention Code § 633.206 uniform safety (3) by the spraying of paint that was toxic while F1 Dorm was occupied by Plaintiff." *Id.* at 18. Plaintiff cannot bring a cause of action under § 633.206 as the statute does not and is not intended to provide a private cause of action. Specifically, the Florida Statute reads:

> (3) In establishing the uniform firesafety standards and the minimum firesafety standards, as required by s. 394.879, the department shall consider types of construction materials and their flame spread and smoke characteristics, occupancy levels, means of egress, special hazard protection, smoke barriers, interior finish, and fire protection systems or equipment and occupancy features necessary to minimize danger to life from fire, smoke, fumes, or panic. In

>   considering these factors, the deparmtnet shall develop minimum standards which
>   area reasonably prudent with respect to protecting life, safety, and property.

§ 633.206, Fla. Stat. (2019). The statute does not provide any particular person or party with

any statutorily-created remedy which would allow for enforcement of the provision. *See Id*.

Nor does Plaintiff have any common law right to enforcement of the statute under any

judicially-created remedy.

However, under certain circumstances, a statute may be interpreted to have an implicit

cause of action for a person with standing to bring a cause of action under. Defendants have

been unable to locate any case in the State of Florida or Federal Court which directly addresses

whether Section 633.206 provides a private cause of action. Normally, implicit causes of

action are created when a criminal statue explicitly provides for prosecution of a certain

criminal offense, but does not provide any additional similar civil remedy. *See e.g. Cort v. Ash*,

422 U.S. 66 (1975). In order to determine whether a statue provides an implicit cause of action,

the United States Supreme Court has described four (4) factors for determination of whether

Federal Statues provide an implicit cause of action. *Id* at 77-78. The four factors described by

the Supreme Court are:

>   First, is the plaintiff 'one of the class for whose especial benefit the statue was
>   enacted,' – that is, does the statute create a federal right in favor of the plaintiff?
>   Second, is there any indication of legislative intent, explicit or implicit to create
>   such a remedy or deny one? Third, is it consistent with the underlying purposes
>   of the legislative scheme to imply such a remedy for the plaintiff? And finally,
>   is the cause of action one traditionally relegated to state law, in an area basically
>   the concern of the States, so that it would be inappropriate to infer a cause of
>   action based solely on federal law?

*Id*. at 78 (internal citations omitted). *See also Merril Lynch, Pierce, Fenner & Smith, Inc. v.

Curran*, 459 U.S. 353, 375-76 (1982) (describing the history of the law of private causes of

action, the reasoning behind overruling *Texas & Pacific Railway Co. v. Rigsby*, 241 U.S. 33

(1916) and changing over fifty (50) years of precedent in *Cort*). In this case, none of the factors weigh in favor of Plaintiff. First, the purpose of the statute was not for Plaintiff's especial benefit, and rather, applies equally to all Florida residents. Second, the statute is intended to require the State Fire Marshal to come up with a code of regulations related to firesafety protocols, not provide a cause of action for Plaintiff. Third, the underlying purposes of the legislative scheme do not imply a remedy for Plaintiff to pursue as the statute merely describes topics for creation of administrative regulations. Finally, the issue of firesafety within the State of Florida the issue is clearly one within the boundaries of the state of Florida and should not allow for a new cause of action in Federal Law.

Additionally, Plaintiff's purported claim itself does not demonstrate a cause of action. Plaintiff states in conclusory fashion that "spraying of paint . . . was toxic while F1 dorm was occupied by Plaintiff." (Doc. 9 at 18). Though some paints may be toxic, there is no evidence provided or described by Plaintiff which supports a conclusion that the paint used was "toxic." Rather, Plaintiff's claim is merely a conclusion with no support. As a result, Plaintiff fails to state a cause of action under section 633.206 of the Florida Statutes.

## III.     Plaintiff is not entitled to compensatory or punitive damages.

Furthermore, Plaintiff fails to state a claim which would entitle him to compensatory or punitive damages as he fails to state a physical injury which is greater than *de minimus*. As such, Plaintiff's request for compensatory or punitive damages from Defendants must be dismissed pursuant to 42 U.S.C § 1997e(e).

"No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Eleventh Circuit is in accord that, under

42 U.S.C. § 1997e(e), compensatory and punitive damages are unavailable absent physical injury. *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory and punitive damages in the absence of the requisite physical injury; *Smith v. Allen,* 502 F.3d 1255, 1271 (11th Cir. 2007) (stating that § 1997e(e) precludes an inmate's claims for compensatory and punitive damages without a prior showing of physical injury); *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000) ("compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated"). The physical injury requirement applies to all federal claims, including constitutional claims.  *Harris v. Garner*, 216 F.3d 970, 984-85 (11th Cir. 2000).

While 42 U.S.C. § 1997e(e) does not define "physical injury," the Eleventh Circuit has held that to satisfy the statute, the physical injury must be more than minimal, but need not be significant. *Daughtry v. Moore*, Slip Copy, 2009 WL 1151858, *5 (S.D. Ala. 2009), citing *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007). *See also Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), vacated, 197 F.3d 1059, reinstated in relevant part, 216 F.3d 970, 972 (11th Cir. 2000) (en banc); *Mitchell v. Horn*, 318 F.3d 523, 536 (3rd Cir. 2003); *Oliver v. Keller*, 289 F.3d 623, 626-628 (9th Cir. 2002); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997), abrogated on other grounds by *Wilkins v. Gaddy*, 559 U.S. 34 (2010). In explaining the type of injury which is not barred by 28 U.S.C. § 1997e(e), some courts have proffered the following common-sense approach; "would the injury **require** or **not require** a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or

medical treatment for the injury?" *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (emphasis added). Stated another way:

> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which last even up to two or three weeks. People in regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed... require more than the types and kinds of bruises and abrasions about which the Plaintiff complains.

*Talley v. Johnson*, 2008 WL 2223259, *3 (M.D. Ga. 2008) (citing *Luong*). *See also Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x. 555, 557 n.3 (11th Cir. 2014) (per curiam) (unreported op.) (citing *Luong*); *Brown v. McGowan*, 2014 WL 4538056, *7 (N.D. Fla. 2014) (same); *Kirkland v. Perkins*, 2014 WL 1333214, *13 n.7 (S.D. Fla. 2014) (same).

Further, the Eleventh Circuit has held that *Harris* and its progeny determined that § 1997e(e) foreclosed claims for both compensatory and punitive damages. *Al-Amin v. Smith*, 637 F.3d 1192, 1197-98 (11th Cir. 2011); *Fraizer v. McDonough*, 264 F. App'x 812, 815 (11th Cir. 2008). Nominal damages, however, are not precluded by § 1997e(e). *Fraizer*, 264 F. App'x at 815; *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007), abrogated on other grounds by *Sossamon v. Texas*, 563 U.S. 277, 283 n.3 (2011). Nominal damages are appropriate "if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003).

When a *pro se* plaintiff has not requested any cognizable claim for damages in his complaint, prior to dismissal, the district court must determine whether the complaint could be liberally construed to request nominal damages. *Logan v. Hall*, 604 F. App'x 838, 841 (11th Cir. 2015); *Hughes*, 350 F.3d at 1162-63. *See also* Fed. R. Civ. P. 54(c) (stating that, except for

default judgments, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleading"); *Jackson v. Wilson*, 2013 WL 5567323, 2 (S.D. Fla. 2013) (concluding that a request for "(30) days deducted off my sentence for each day spent in segregation (82 days in segregation x 30 = 2,460 days) and/or $250,000.00 in restitution" did not contemplate a request for nominal damages); *Honors v. Judd*, 2011 WL 3498287, 6-7, n.2, n.3 (M.D. Fla. 2011) (indicating that a request for relief of "I would like the court to allow me to pursue this claim to a jury for the severe injuries I received at the hands of officers. I would like punitive and compensatory money damages" did not request nominal damages.); *Holloway v. Bizzaro*, 571 F. Supp. 2d 1270, 1272-73 (S.D. Fla. 2008) (finding that Plaintiff's complaint failed to consider a request for nominal damages based on a request for "Compensatory damages $10,000,000, attorney fees if applicable, and trial by jury.").

In this case, Plaintiff's injuries do not rise to a level which is greater than *de minimus* in nature as at most, Plaintiff's physical injuries are "restricted breathing, skin irritation, headaches, watery eyes, and uncontrollable sneezing." *See* (Doc. 9 at 20, 21). *See also* (Defendants' Exhibits E-1, E-2, E-3, E-4, F). At around the time of the incident, Plaintiff did not complain of any medical issues. *See* (Defendants' Exhibit E-3 at 2-7). Plaintiff notes that he was suffering from sores as well, but Plaintiff's medical records and own testimony indicate that the sores could have been caused based on a pre-dating incident as he had been dealing with the sores for a long period of time prior. *See* (Defendants' Exhibits E-1, E-2, E-3, E-4, F).

The injuries Plaintiff complains of within his Amended Complaint (Doc. 9 at 20-21), and during his deposition testimony, *see* (Defendants' Exhibit F), which are allegedly directly attributable to the incidents at issue in this case, are consistent with the use of chemical agents in use of force cases which were determined to be *de minimus*. *See Quinlan v. Pers. Transp. Servs.*

*Co.*, 329 F. App'x 246, 249 (11th Cir. 2009) (unreported op.) (complaints of temporary chest pain, headache, difficulty breathing, and back pain which did not require immediate medical attention were *de minimis* and insufficient to surmount § 1997e's bar); *Fischer v. Ellegood*, 239 F. App'x 428, 430, 432 (11th Cir. 2007) (unreported op.) (doubting that plaintiff provided sufficient evidence of injury that resulting from being sprayed with pepper spray).*See also Hill v. Crum*, 727 F.3d 312, 319 n.10 (4th Cir. 2013) (noting that "plaintiff suffered only *de minimis* injuries resulting from use of pepper spray") (citation omitted); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (unreported op.) (stating that plaintiff failed to allege more than a *de minimis* physical injury where he did not have respiratory distress and was merely uncomfortable due to the exposure to pepper spray); *Corsetti v. Tessmer*, 41 Fed.Appx. 753, 755-56 (6th Cir. 2002) (two small bruises and minor cuts were de minimis injury and therefore not actionable under § 1997e(e), citing, *inter alia*, *Luong*); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (stating that plaintiff failed to allege any significant physical harm when he alleged that he incurred burning eyes and lung congestion as a result of pepper spray); *Parker v. Dubose*, No. 3:12cv204/MCR/CJK, 2013 WL 4735173, at *2 (N.D.Fla. Sept. 3, 2013) (unpublished order) (black-eye, bloody lip, scrapes, an abrasion to his face and chronic back pain are minimal and barred by § 1997e(e)); *Magwood v. Tucker*, No. 3:12cv140/RV/CJK, 2012 WL 5944686, at *5 (N.D.Fla. Nov. 14, 2012) (R&R), 2012 WL 5944657 (N.D.Fla. Nov. 28, 2012) (unpublished order adopting R&R) (district court finding plaintiff failed to show more than a *de minimis* physical injury from the use of chemical agents)); *Robinson v. Tifft*, No. 3:11cv560/LAC/CJK, 2012 WL 2675467, at *2 (N.D.Fla. June 1, 2012) (R&R), 2012 WL 2675469 (N.D.Fla. July 6, 2012) (unpublished order adopting R&R)  (same); *Palmer v. Walker*, No. 2:09-cv-401-FtM-36DNF, 2011 WL 836928, at *8 (M.D.Fla. Mar. 9, 2011) (unpublished) (same); *Kornagay v.*

*Burt*, No. 3:09cv281/LAC/EMT, 2011 WL 839496, at *21–22 (N.D.Fla. Feb. 8, 2011) (R&R), 2011 WL 855619 (N.D.Fla. Mar. 9, 2011) (unpublished order adopting R&R)  (same); *Daughtry v. Moore*, No. 08-00215-KD-C, 2009 WL 1151858, *5 (S.D.Ala. Apr. 27, 2009) (unpublished order) (bumps on neck and shoulders insufficient to satisfy the physical injury requirement of § 1997e(e)). Plaintiff's filings and medical records do not demonstrate any significant injury, and Plaintiff's only exhibits related to the issue demonstrate that he was dealing with breathing issues before the incidents at issue and possibly almost a year beforehand. *See* (Doc. 9 at 79-83). As a result, based on Plaintiff's injuries not being greater than *de minimus* in nature, Plaintiff is not entitled to compensatory or punitive damages.

## <u>CONCLUSION</u>

**WHEREFORE**, for the foregoing reasons, Defendants respectfully requests this Court enter Summary Judgment in their favor.

Respectfully Submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872

/s/ Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Motion for Summary Judgment* was e-filed electronically through CM/ECF on May 3, 2019, and furnished by U.S. Mail to: Christopher Dyal, DOC# 958733, Lake Correctional Institution, 19225 U.S. Highway 27, Clermont, Florida 34715-9025 on May 3, 2019.

/s/ Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com