**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHRISTOPHER DYAL,

        Petitioner,

vs.                       Case No.:   3:17-cv-1284-J-32JBT

C.O. CARDIGAN, et al.,

        Respondents.

_____/

## <u>ORDER</u>

### I.   <u>Status</u>

Plaintiff Christopher Dyal, a <u>pro</u> <u>se</u> inmate in the custody of the Florida Department of Corrections (FDOC), is proceeding on an amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 9). Plaintiff sues two correctional officers at Putnam Correctional Institution (Putnam C.I.) in their individual capacities, Charles Cardigan, Jr., and Thomas Oliver. Doc. 9 at 2.[1] Plaintiff raises seven claims, which arise from the repainting of Plaintiff's dormitory in March 2017, Plaintiff's filing of grievances about the repainting, and subsequent events that were allegedly in retaliation for the grievances.[2]

---

[1]    Plaintiff also sued one "unknown official," but the Court dismissed the claims against that person on July 12, 2019. (Doc. 68).

[2]    In Claims 1 and 2, Plaintiff alleges that Officer Cardigan was deliberately indifferent to his safety while repainting the ceiling in Plaintiff's dormitory. In Claims 3 and 4, Plaintiff alleges that Officer Cardigan retaliated against him

This case is before the Court on Defendants' Motion for Summary Judgment (Doc. 56) and attached exhibits (Docs. 56-1 through 56-9). After receiving two opportunities to amend his response, Plaintiff filed a Second Amended Response in opposition to the Motion (Doc. 80), along with his own exhibits (Doc. 80-1 through 80-7). Thus, the Motion is ripe for a decision.

## II.  **Summary Judgment Standard**

"Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362 (11th Cir. 2018) (quotations and citation omitted); see Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotations and citation omitted)). In considering a summary judgment motion, the Court views "the evidence and all reasonable inferences

---

for filing a grievance about the repainting by transferring him to another prison. In Claim 5, Plaintiff alleges that Officer Oliver searched his cell and confiscated his property, also in retaliation for filing grievances. In Claims 6 and 7, Plaintiff alleges that Officer Cardigan's conduct during the repainting violated the Florida fire prevention code, § 633.206, Fla. Stat., and the federal Clean Air Act, 42 U.S.C. § 7401, et seq., respectively.

drawn from it in the light most favorable to the nonmoving party." Hornsby-Culpepper, 906 F.3d at 1311 (quotations and citation omitted).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote and citation omitted); see Winborn v. Supreme Beverage Co. Inc., 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam) ("If the movant satisfies the burden of production showing that there is no genuine issue of fact, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" (quoting Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008)). "A 'mere scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted)).

However, "[w]hen the non-moving party bears the burden of proof on an issue at trial, the moving party need not 'support its motion with affidavits or other similar material negating the opponent's claim,' in order to discharge this initial responsibility. Instead, the moving party simply may 'show[ ] – that is, point[ ] out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Gonzalez v. Lee Cnty. Hous. Auth., 161 F.3d 1290,

1294 (11th Cir. 1998) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986)).

> If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then there is no genuine dispute as to any material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

<u>Alston v. City of Darien</u>, 750 F. App'x 825, 831 (11th Cir. 2018) (quoting <u>Celotex Corp.</u>, 477 U.S. at 322-23); <u>see also</u> <u>Lowe v. Exel, Inc.</u>, 758 F. App'x 863, 865 (11th Cir. 2019) ("[I]f the non-moving party fail[s] to make a showing on an essential element of his case with respect to which he ha[s] the burden of proof, then the entry of judgment as a matter of law is appropriate." (quotations and citation omitted)).

## III.   **Discussion**

Because this case is before the Court on Defendants' Motion for Summary Judgment, the Court construes the facts in the light most favorable to Plaintiff. <u>Hornsby-Culpepper</u>, 906 F.3d at 1311. Plaintiff's Amended Complaint and Second Amended Response are not a model of clarity. <u>See</u> Doc. 9, Doc. 80. However, because Plaintiff is <u>pro se</u>, the Court construes his pleadings liberally. <u>See</u> <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998).

## A. Claims 1 and 2: Deliberate Indifference to Inmate Safety

Plaintiff alleges that Officer Cardigan was deliberately indifferent to his safety while repainting the F1 Dormitory at Putnam C.I., where Plaintiff resided. Doc. 9 at 14-15. On March 2, March 7, and March 8, 2017, Officer Cardigan repainted the ceiling while Plaintiff occupied the dormitory. Id. at 14. To do so, Officer Cardigan used an industrial paint sprayer powered by an air compressor. Id. The paint "had toxic fumes on the side of the can," including ethylbenzene, which is a possible carcinogen. Id. Plaintiff was not given safety equipment to prevent him from inhaling or otherwise having contact with the fumes. See id. Plaintiff states that he verbally informed Officer Cardigan "that his actions were a threat to health [and] future health," id., but he does not identify what specific health threats he informed Officer Cardigan about. Plaintiff filed a grievance about the incident on March 20, 2017, "and provided officials with Florida fire prevention codes." Id. at 15.

On March 21, March 22, and March 23, 2017, Officer Cardigan returned to F1 Dormitory to continue repainting the ceiling. According to Plaintiff, this was "[a]fter the officials were provided with information that would have shown violations, constituteing [sic] deliberate indifference." Id. at 15. Plaintiff generally alleges that Officer Cardigan "creat[ed] a significant hardship that changed the normal activities of prison life for the plaintiff," and that Officer Cardigan "failed to protect the plaintiff from [a] health risk, with full knowledge

of the safety issues in his actions." Id.[3]

To support his allegation that Officer Cardigan knew the paint fumes were toxic, he attached a Material Safety Data Sheet ("MSDS") to the Amended Complaint and the Second Amended Response. Doc. 9-4 (Am. Compl. Ex. 4); Doc. 80-4 (Pl. S.J. Ex. 4).[4] The MSDS contains information about the contents of the paint, recommended precautions, and potential health hazards. Plaintiff specifically cites Sections 8 and 11 of the MSDS. Doc. 9 at 14-15. Section 8 sets forth the "precautions to be taken in use," which include adequate ventilation, avoidance of breathing in vapor or spray mist, washing hands after use, and "[i]f personal exposure cannot be controlled below applicable limits by ventilation, wear[ing] a properly fitted organic vapor/ particulate respirator." Doc. 80-4 at § 8. Section 11 sets forth "chronic health hazards":

> Reports have associated repeated and prolonged overexposure to solvents with permanent brain and nervous system damage.

> Ethylbenzene is classified by IARC[5] as possibly carcinogenic to humans (2B) based on inadequate evidence in humans and sufficient evidence in laboratory animals. Lifetime inhalation exposure of rats and mice to high ethylbenzene concentrations resulted in increases in certain types of cancer, including kidney tumors in rats and lung and liver tumors in mice. These effects were not observed in animals exposed to lower concentrations. There is no evidence that ethylbenzene causes cancer in humans.

---

[3]     The repainting on March 2, 7, and 8, 2017, forms the basis for Claim 1. The repainting on March 21-23, 2017, forms the basis for Claim 2.

[4]     Plaintiff assumes that Officer Cardigan read the MSDS.

[5]     International Agency for Research on Cancer

> IARC's Monograph No. 93 reports there is sufficient evidence of carcinogenicity in experimental rats exposed to titanium dioxide but inadequate evidence for carcinogenicity in humans and has assigned a Group 2B rating. In addition, the IARC summary concludes, "<u>No significant exposure to titanium dioxide is thought to occur during the use of products in which titanium is bound to other materials, such as paint</u>."

<u>Id.</u> at § 11 (emphasis added).

Plaintiff alleges that Officer Cardigan's indifference constituted cruel and unusual punishment, in violation of the Fifth, Eighth, and Fourteenth Amendments. Doc. 9 at 14, 15.[6] As a result, Plaintiff claims he suffered "a significant injury to [his] health and future health" because he was exposed "to toxic fumes that are classified ... as a possible carcinogen[ ]." Doc. 9 at 20. Additionally, he claims he suffered from restricted breathing, skin irritation, headaches, watery eyes, and uncontrollable sneezing. <u>Id.</u> at 20, 21. In his deposition, Plaintiff states that he saw medical staff for these ailments, and that he was treated with nasal spray and Chlorphen. Doc. 56-9 at 43 (Def. S.J.

---

[6] Because Plaintiff was a convicted prisoner in state custody at the time of the alleged violation, his claim arises under the Eighth Amendment, not the generalized concepts of due process encompassed by the Fifth or Fourteenth Amendments. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989) ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is, ... at best redundant of that provided by the Eighth Amendment."). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (quoting <u>Graham</u>, 490 U.S. at 395).

Ex. F, Plaintiff's Deposition).[7] Based on Claims 1 and 2, Plaintiff seeks $100,000 in compensatory damages, $150,000 in punitive damages, and nominal damages "per the expert opinion of this honorable court." Doc. 9 at 25.

Officer Cardigan submitted a declaration in support of summary judgment. Doc. 56-2 (Def. S.J. Ex. B, Cardigan Declaration). Officer Cardigan states in relevant part:

3. During the month of March 2017, I was tasked with painting the ceiling of F Dorm at Putnam Correctional Institution. The painting was conducted while inmates were at recreation and began by first setting up the dorm in a manner which was intended to protect inmate property. In doing so, the inmates were given the choice to leave the dorm while the painting was conducted by attending recreation, and once all inmates who chose to leave were gone, I moved the beds in the dorm to the side of the dorm, and placed old sheets on the floor to cover the floor. I then had orderlies and myself utilize a power sprayer to paint the ceiling. Any excess overspray was cleared up with paint thinner, and the power sprayer was cleaned outside with paint thinner. During the spraying process, the orderlies which are assisting in the painting are given respirators and eye protection to wear while spraying. The painting process was conducted for a period of one, at times, maybe two hours daily. The painting of the dorms was a regular occurrence and was not out of the ordinary as periodically the paint within the dorms and institution would fade due to normal wear and tear.

4. Sometime during the month of March 2017, while I was performing my duties of painting the ceiling of F Dorm, Plaintiff approached me and complained of issues related to the smell of the paint. Based on Plaintiff's complaints, I spoke with Assistant Warden Godwin and Major Mercado about the complaints. Based on that conversation, I was instructed to finish my responsibility for the day. However, the next day, I

---

[7]    Chlorphen is an antihistamine.

was instructed by Major Mercado to stop painting. I did not paint after I was instructed to stop.

> 5. At no point during March 2017 did I act in a manner which I believe placed the safety of inmates, officers, or volunteers within F Dorm at risk. I did not intend to harm anyone and believed that painting in the manner I did was the safest means of performing my required duties. I attempted to act in a manner which protected all individuals and their property.

Doc. 56-2 at ¶¶ 3-5.

Additionally, Officer Cardigan points out that according to a grievance attached to the Amended Complaint, the doors in Plaintiff's dormitory were opened to improve ventilation in response to inmates' concerns. Doc. 56 at 9. In grievance number 214-1703-0012, Plaintiff complained to the Warden about the repainting of his dormitory, and alleged that Officer Cardigan threatened him with "be[ing] locked up and transferred per Asst. Warden Godwin and Major Mercado" if he filed a grievance. Doc. 9-1 at 25 (Am. Compl. Ex. 1-X). In response, Warden N. Jeffcoat wrote:

> I have personally spoken to other inmates who are housed in F-Dorm side 1. Those that were interviewed did say that the odor was unpleasant until the door was opened to all for air circulation, none had overspray on any of their items, and at no time were they threatened with being locked up or transfer[red] if they wrote a grievance or complained. Which is evident, because you have not been locked up or transferred for grieving this issue multiple times.

Id.[8] Based on these facts, Officer Cardigan argues he is entitled to summary

---

[8] The record on summary judgment includes documents attached to the complaint. Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009).

judgment because he responded reasonably to any risk of harm. Doc. 56 at 9-10.

In his Second Amended Response and attached declaration, Plaintiff denies that Officer Cardigan conducted the repainting while the inmates were on recreation or that Officer Cardigan gave him the option of leaving the dormitory. Doc. 80 at 2, 10-11; Doc. 80-5 at ¶ 8. Plaintiff states that the prisoners' recreation time did not coincide with the time of day when Officer Cardigan repainted the dorm. Doc. 80 at 11. And Plaintiff states in his declaration that "[a]t no time during all these occasions [were] any of the Inmates housed in this dorm given the opportunity to leave." Doc. 80-5 at ¶ 8. However, in his deposition, Plaintiff acknowledged that the painting was begun while he and other inmates were out at work:

> A. Okay. This is what happened. I worked outside grounds.
>
> Q. Okay.
>
> A. We come in from work around 12:30, 1:30, in between that area every day.
>
> ***
>
> A. Okay. When we come in from work, they had all the bunks pulled off the walls and sheets hanging over the bunks, industrial sprayer with a 5-gallon bucket of paint with a compressor outside of the building spraying paint in the dorm….

Doc. 56-9 at 21-22. Plaintiff also admitted that when he and another inmate confronted Officer Cardigan about the paint fumes, Officer Cardigan responded that he would "go talk to my bosses about it and see what they say." Id. at 24.

Thus, Plaintiff corroborates Officer Cardigan's statement that he relayed Plaintiff's concerns about the paint fumes to his superiors. Plaintiff does not specifically dispute Officer Cardigan's statement that he ceased painting when Major Mercado told him to stop, and that he repainted the dorm for no more than two hours at a time.[9] Furthermore, Plaintiff does not deny that prison staff opened the doors to the F-Dormitory to improve ventilation in response to inmates' concerns. Indeed, Plaintiff testified on deposition that staff "open[ed] the doors and stuff a couple of days later because the inmates kept complaining about" the odor, and that staff used "mineral spirits" to clean up paint overspray on the floor. Doc. 56-9 at 23. Finally, Plaintiff himself points out that according to the medical record, his first complaint about upper respiratory problems was 55 days after his last exposure to the paint fumes. Doc. 80 at 24. Plaintiff maintains that his <u>symptoms</u> surfaced much earlier, but he does not deny, as a historical fact, that nearly two months passed before he filed a sick call request about respiratory issues. Doc. 80 at 24; <u>see also</u> Doc. 80-6 at 19 (Pl. S.J. Ex. 6); Doc. 9-5 (Am. Compl. Ex. 6) (sick call requests dating back to May 2017).

---

[9]    In his declaration, Plaintiff states "that the affidavits and declarations supplied to this Court in Defendants['] summary judgment motion are false and do not reflect the documentary evidence that I have presented to this Court." Doc. 80-5 at ¶ 15. However, such a broad, conclusory denial is not enough to create a genuine dispute of material fact as to each and every statement in the Defendants' affidavits. <u>See</u> <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000) (conclusory allegations in an affidavit, unsupported by facts, will not defeat summary judgment).

A dispute of material fact exists about whether Officer Cardigan conducted the repainting during the inmates' recreational time and whether inmates were allowed to leave the dormitory. The Court therefore assumes, for purposes of summary judgment, that Officer Cardigan did <u>not</u> conduct the repainting during recreation time and did <u>not</u> allow Plaintiff to leave the building. However, there is no genuine dispute of material fact about the following: Officer Cardigan started the repainting process while the inmates were away from the dorm (albeit for work instead of recreation); when Plaintiff complained about the paint fumes, Officer Cardigan relayed Plaintiff's concerns to his superiors; Officer Cardigan painted for no more than two hours at a time; Plaintiff did not seek medical attention regarding respiratory issues for nearly two months; and importantly, Officer Cardigan or other staff opened the doors to the F dormitory to improve airflow in response to inmates' complaints. Construing the facts in Plaintiff's favor, the Court finds that Officer Cardigan is entitled to summary judgment based on the uncontested facts.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones…." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). The Eleventh Circuit has explained the elements of an Eighth Amendment violation:

> Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. <u>Id</u>. However, as noted above, only those

conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S. Ct. at 1000.[10] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S. Ct. at 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303, 111 S. Ct. at 2327.[11]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010). The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). However, not every injury a prisoner suffers as a result of a prison condition necessarily equates to a constitutional violation. See Goodman v. Kimbrough, 718 F.3d 1325, 1333 (11th Cir. 2013). Only injuries that occur as a result of a prison official's deliberate indifference rise to the level of an Eighth Amendment violation. See Farmer, 511 U.S. at 834.

Recently, the Eleventh Circuit explained the showing required to demonstrate deliberate indifference to a substantial risk of harm:

To establish a § 1983 claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."

The first element of deliberate indifference—whether there was a substantial risk of serious harm—is assessed objectively and requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." The second element – whether the defendant was deliberately indifferent to that risk – has both a subjective and an

---

10    Hudson v. McMillian, 503 U.S. 1 (1992).
11    Wilson v. Seiter, 501 U.S. 294 (1991).

objective component. Subjectively, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw the inference." Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she "knew of ways to reduce the harm" but knowingly or recklessly declined to act. Finally, the plaintiff must show a "necessary causal link" between the officer's failure to act reasonably and the plaintiff's injury.

Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (per curiam) (internal citations and footnotes omitted) (emphasis added).

The Eleventh Circuit has further explained:

Proof of deliberate indifference requires a great deal more than does proof of negligence: "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Purcell, 400 F.3d at 1319-20 (emphasis supplied) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).[12]

In other words, a plaintiff in [Dyal]'s position must show not only that there was a substantial risk of serious harm, but also that [Defendants] "subjectively knew of the substantial risk of serious harm and that [they] knowingly or recklessly disregarded that risk." Hale, 50 F.3d at 1583 (alteration omitted) (internal quotation marks omitted).[13] Whether prison officials had the requisite awareness of the risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S. Ct. at 1981 (citation omitted). At the same time, the deliberate indifference standard – and the subjective awareness required by it – is far more onerous than normal tort based standards of conduct sounding in negligence:

---

[12]    Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313 (11th Cir. 2005).

[13]    Hale v. Tallapoosa Cnty., 50 F.3d 1579 (11th Cir. 1995).

"Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983." <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam). And[,] needless to say, to defeat a motion for summary judgment, [a plaintiff] must adduce specific evidence from which a jury could reasonably find in his favor; "[t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient." <u>Anderson</u>, 477 U.S. at 252, 106 S. Ct. at 2512.

<u>Goodman</u>, 718 F.3d at 1332 (emphasis deleted); <u>Melton v. Abston</u>, 841 F.3d 1207, 1223 (11th Cir. 2016) (per curiam) (stating that a plaintiff who claims deliberate indifference must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence").

Applying these standards to the undisputed facts, Officer Cardigan did not display deliberate indifference to Plaintiff's safety during the repainting of his dormitory. The Court assumes that exposure to paint fumes can present an actionable risk of harm under the Eighth Amendment. <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1993) (holding that inmate's exposure to environmental tobacco smoke from being confined with a five-pack-a-day smoker was actionable because "the Eighth Amendment protects against future harm to inmates," not just threats to current health, when the prison condition "is sure or very likely to cause serious illness and needless suffering."). The Court also assumes that Officer Cardigan was subjectively aware of the risk posed by paint fumes. However, the facts that are undisputed show that Officer Cardigan responded reasonably to the risk. First, Officer Cardigan attempted

to mitigate the impact on the inmates by relocating their property and beginning the repainting process while the inmates were away from the dorm. Doc. 56-2 at ¶ 3; Doc. 56-9 at 21-22. Although the parties disagree about whether Officer Cardigan undertook repainting during the inmates' recreation time and whether Plaintiff was allowed to leave the dorm, Plaintiff stated in deposition that repainting was begun while the inmates were out to work. Doc. 56-9 at 21-22. Second, Officer Cardigan limited repainting to no more than two hours at a time. Doc. 56-2 at ¶ 3. Third, when Plaintiff approached Officer Cardigan about the paint fumes, Officer Cardigan relayed Plaintiff's concerns to his superiors, Assistant Warden Godwin and Major Mercado. Doc. 56-2 at ¶ 4. Officer Cardigan continued painting because he was ordered to do so, but Officer Cardigan ceased painting the next day when Major Mercado told him to stop. Id. Fourth, Officer Cardigan or other prison staff opened the doors in the F dormitory to improve ventilation in response to inmates' complaints about the odor.[14]

Officer Cardigan is liable for deliberate indifference only "if 'he knew of ways to reduce the harm but knowingly declined to act' or if 'he knew of ways

---

[14]    It is also worth noting that "[t]he [repainting] of the facility clearly had a legitimate objective not related to punishment." <u>Joseph v. Foti</u>, 37 F.3d 632, *3 (5th Cir. 1994) (Unpublished). Officer Cardigan repainted the dorm as part of routine maintenance, because "periodically the paint within the dorms and institution would fade due to normal wear and tear." Doc. 56-2 at ¶ 3. Plaintiff does not dispute this statement.

to reduce the harm but recklessly declined to act.'" Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 620 (11th Cir. 2007) (quoting Hale, 50 F.3d at 1583). The facts that are undisputed show that Officer Cardigan had reason to believe that the responsive measures described above were sufficient to protect inmate safety. According to the other inmates in F Dorm, "the odor was unpleasant until the door was opened to all for air circulation," Doc. 9-1 at 25, reflecting that improving the airflow in the dorm alleviated the problem. And, none of the inmates reported having overspray on any of their items. Id.

Moreover, the MSDS on which Plaintiff relies to establish that Officer Cardigan knew of a substantial risk of harm does not suggest that Officer Cardigan's response was unreasonable. The MSDS recommends that those using the paint wear eye protection, gloves, and a respirator if ventilation is inadequate to control exposure. Doc. 9-4 at § 8; Doc. 80-4 at § 8. Officer Cardigan did supply respirators and eye protection to the orderlies who assisted him in painting, Doc. 56-2 at ¶ 3, but not to Plaintiff. However, Plaintiff was not one of the workers applying the paint. Additionally, the MSDS advises that general exhaust ventilation is "acceptable if exposure to materials in Section 2 is maintained below applicable [OSHA] exposure limits," and that respiratory protection is required only "[i]f personal exposure cannot be controlled below applicable limits by ventilation." Doc. 80-4 at § 8. Plaintiff submits no evidence that Officer Cardigan knew whether Plaintiff's exposure exceeded OSHA

regulations even after opening the doors for ventilation. Thus, Officer Cardigan could reasonably have believed that his response was adequate. See Moore v. Faurquire, 595 F. App'x 968, 974 (11th Cir. 2014) (on summary judgment, affirming that defendants responded reasonably to the risks posed by a lead-paint removal project, and "even accepting Moore's allegation that during one week of two months the defendants gave him only a face shield and not a respirator, he has pointed to no evidence that the defendants were aware that applying paint stripper for a brief period of only one week without a respirator posed a substantial risk of serious harm.") (citation omitted). Indeed, other inmates reported that the odor abated after the doors to the F Dorm were opened.

As for long-term health hazards, the MSDS provides that "repeated and prolonged overexposure to solvents" is associated with neurological damage, that ethylbenzene is "possibly carcinogenic" in higher concentrations but "no evidence [exists] that ethylbenzene causes cancer in humans," and that there is "inadequate evidence" that titanium dioxide is carcinogenic to humans, since "'[n]o significant exposure to titanium dioxide is thought to occur during the use of products in which titanium dioxide is bound to other materials, such as paint.'" Doc. 80-4 at § 11 (quoting IARC Monograph No. 93). In short, the MSDS indicates that the compounds in the paint posed a chronic health hazard only in high concentrations or with "repeated and prolonged overexposure." In light

of the information in the MSDS, Officer Cardigan could reasonably have believed that the mitigation measures he employed were adequate to prevent any serious risks to Plaintiff's immediate or long-term health.

Finally, Plaintiff admits that he did not complain of upper respiratory problems until 55 days after the last exposure to the paint fumes. Doc. 80 at 24. Had Plaintiff sought or required immediate medical attention, that might have alerted Officer Cardigan he was not doing enough to minimize Plaintiff's exposure. But because Plaintiff waited nearly two months to file a medical complaint, Officer Cardigan had all the less reason to suspect that Plaintiff was at immediate risk. See Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987) (in the absence of medical proscriptions known to the correctional officer, his decision to ignore an inmate's complaints of dizziness and nausea from paint fumes, and to require the inmate to climb a ladder to continue painting, was nothing more than mere negligence).

The evidence, construed in the light most favorable to Plaintiff, does not show that Officer Cardigan knew of other ways to reduce the harm and knowingly or recklessly declined to act upon them. Marbury, 936 F.3d at 1233; Rodriguez, 508 F.3d at 620. A prison official is not liable for deliberate indifference as long as he "responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. After all, "[a] prison official's duty under the Eighth Amendment is to ensure reasonable safety, a

standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." <u>Id.</u> at 844-45 (emphasis added) (internal quotation marks and citations omitted). The facts that are not in dispute show that Officer Cardigan took reasonable – even if imperfect – precautions to ensure the safety of Plaintiff and other inmates during repainting. Because there is no evidence from which a jury could conclude that Officer Cardigan disregarded the risk of harm "by conduct that is more than mere negligence," <u>Melton</u>, 841 F.3d at 1223, he is entitled to summary judgment on Plaintiff's deliberate indifference claims.[15]

## B. Claims 3 and 4: Retaliatory Transfer

In Claims 3 and 4, Plaintiff alleges that Officer Cardigan transferred him from Putnam C.I. in retaliation for filing grievances about the repainting.[16] Plaintiff alleges that on March 7, 2017, Officer Cardigan threatened Plaintiff that if he complained or wrote a grievance about the repainting of the F1 Dorm,

---

[15] Because the Court already construes the facts in the light most favorable to Plaintiff, there is no need to address Plaintiff's spoliation-of-the-evidence argument regarding video footage of the F Dorm. Doc. 80 at 3-4, 27-28.

[16] Claim 3, standing alone, alleges only that Officer Cardigan threatened to transfer Plaintiff to another prison if he filed a grievance about the repainting. However, verbal abuse and threats alone do not amount to a constitutional violation. <u>Hernandez v. Fla. Dep't of Corr.</u>, 281 F. App'x 862, 866 (11th Cir. 2008). In Claim 4, Plaintiff alleges that Officer Cardigan actually carried out the threat by transferring him to another prison. Because Plaintiff is pro se, the Court liberally construes Claims 3 and 4 together to plead a claim for retaliatory transfer.

he "would be locked up or transfer[r]ed." Doc. 9 at 16. Plaintiff states that he

"was liveing [sic] in fear," but nevertheless, on March 13, 2017, he filed a

grievance with the Secretary of the FDOC regarding Officer Cardigan's alleged

threat to transfer him. Id. The record also shows that Plaintiff filed several

other grievances and administrative appeals about the repainting. Doc. 9-1 at

6-7, 12-14, 18-19, 24-26. On March 30, 2017, Plaintiff was transferred from

Putnam C.I. to Marion C.I. Doc. 9 at 16. According to Plaintiff, an unknown

official initiated or approved the transfer in retaliation for the grievance he filed

with the Secretary of the FDOC. Id. at 16-17. Plaintiff alleges that the transfer

placed a hardship on him because he was subjected to "constant harassment

and [a] change in the normal activities of prison life." Id. at 17.

Officer Cardigan filed a declaration in support of the Motion for Summary

Judgment. Officer Cardigan states in relevant part:

> 6. It has come to my attention through the filing of Plaintiff's current lawsuit that I am accused of threatening Plaintiff with retaliation either by transferring him to a different institution or with discipline for writing grievances. This is simply not true. I never threatened Plaintiff with any kind of adverse action. I understand that Plaintiff and other inmates have the right to file grievances to make complaints about my or other officers' behavior and to obtain appropriate relief when requested. I do not hold it against inmates who file grievances and recognize that grievances or inmate requests filed by inmates are part of my job and responsibility as a corrections officer. I have always treated inmates with the same degree of respect that I would treat any other individual with.

7. Further, as it relates to an alleged transfer of Plaintiff, I had no power to take such an action or even recommend a transfer of an inmate. I was a corrections officer. If Plaintiff was transferred to a different institution, it was for reasons that I am not aware of and have nothing to do with my or Plaintiff's interactions during the month of March. The authority to transfer inmates rests with much higher-ranking individuals than corrections officers. My understanding is that wardens, Institutional Classification Teams, classification officers, and officials within the Central Office for the Florida Department of Corrections have the ability to either recommend or actually transfer individuals. I have and have never had any ability to dictate transfers of inmates.

Doc. 56-2 at ¶¶ 6, 7 (footnote omitted). Additionally, Officer Cardigan submitted a record of Plaintiff's FDOC transfer history, showing that Plaintiff was transferred at least 15 times between November 25, 2014, and May 12, 2017. Doc. 56-3 (Def. S.J. Ex. C).

In the Second Amended Response, Plaintiff frames his claim slightly differently. Plaintiff does not allege that Officer Cardigan directly threatened to transfer him for filing a grievance. Rather, Plaintiff claims that Officer Cardigan relayed to him and other inmates "that 'if you write this up or complain about this you will be locked up and transferred, per the Assistant Warden and the Major.'" Doc. 80 at 3 (emphasis added) (citing Doc. 80-3); see also Doc. 80-5 at ¶ 5. Thus, Plaintiff states that the threat of a transfer originated from the Assistant Warden and the Major, and that Officer Cardigan merely communicated the threat. Plaintiff does not deny Officer Cardigan's

statement that he had no authority to transfer Plaintiff or even to recommend a transfer. Nor does Plaintiff dispute Officer Cardigan's statement that placement decisions "rest[ ] with much higher-ranking individuals than corrections officers," such as personnel in the Central Office. Doc. 56-2 at ¶ 7.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1249 (11th Cir. 2003). "While an inmate does not have a constitutionally protected liberty interest against being transferred to a less agreeable prison, Moody v. Daggett, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 279 n.9, 50 L. Ed. 2d 236 (1976), prison officials may not transfer an inmate in retaliation for exercising his right to file grievances against prison officials." Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009) (citing Bridges v. Russell, 757 F.2d 1155, 1157 (11th Cir. 1985)).

> To prevail on a retaliation claim, the inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."

O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (alterations in original) (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008)).

Officer Cardigan argues that Plaintiff cannot meet the second or third prongs of this test. Doc. 56 at 13. As to the second prong, he argues that despite

Plaintiff "living in fear," the threat of a transfer did not deter Plaintiff from filing any grievances. Id. As to the third prong, he argues that Plaintiff cannot demonstrate a causal relationship between the filing of grievances and the transfer to Marion C.I., at least as far as Officer Cardigan is concerned. Officer Cardigan points out that he did not have the ability or authority to transfer an inmate. Id. at 12, 13.

The Court agrees that Plaintiff cannot satisfy the causation prong.[17] Courts have routinely ruled that a corrections officer is not liable for retaliation where the plaintiff has failed to show that the defendant was responsible for the retaliatory action alleged. See, e.g., Seibert v. Comm'r, Ga. Dep't of Corr., 680 F. App'x 837, 840-41 (11th Cir. 2017) (affirming dismissal of retaliatory transfer claim against three prison officers where plaintiff failed to allege sufficient facts showing that the three defendants were responsible for the transfer); Smith v. Fla. Dep't of Corr., 318 F. App'x 726, 728 (11th Cir. 2008) (affirming dismissal of retaliatory transfer claim against a corrections officer because "Smith has not alleged that Barriner was in any way responsible for

---

[17] The Court disagrees that, because Plaintiff actually filed a grievance, he cannot meet the second prong of the retaliation test. The second prong is an objective one, which focuses on whether "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005). It is established that "prison transfers qualify as adverse actions for purposes of retaliation." Smith v. Governor of Ala., 562 F. App'x 806, 815 (11th Cir. 2014) (citations omitted).

the decision to transfer him."); <u>Jordan v. McCloud</u>, No. CV603–141, 2006 WL 1805847, at *4 (S.D. Ga. Jun. 29, 2006) (recommending that defendants' motions for summary judgment be granted on retaliatory transfer claim where "[m]ost of the Movants had no authority to transfer Plaintiff to another facility" and "Plaintiff has presented no evidence to refute Movants' assertions."), <u>report and recommendation adopted</u>, 2006 WL 2051325 (S.D. Ga. Jul. 20, 2006); <u>cf.</u> <u>Stallworth v. Wilkins</u>, — F. App'x —, 2020 WL 261659, at *3 (11th Cir. Jan. 17, 2020) (inmate adequately pled a retaliation claim where he alleged that the defendants who gave him contaminated meal trays also had the authority to place orders with food service and supervised the provision of meal trays).

In response to the Motion for Summary Judgment, Plaintiff does not deny that Officer Cardigan lacked authority to transfer him to another institution or even to recommend a transfer. <u>See</u> Doc. 80; Doc. 80-5. Nor does Plaintiff deny that the decision to transfer an inmate rests with higher-ranking FDOC officials (none of whom are named as defendants in the Amended Complaint). While Plaintiff maintains that he was transferred in retaliation for filing grievances, he offers no evidence that <u>Officer Cardigan</u> was responsible for the transfer. Therefore, in light of the uncontested facts, Officer Cardigan is entitled to summary judgment on Plaintiff's retaliatory transfer claim.[18]

_____

[18] The Amended Complaint does not identify Officer Oliver as a defendant for purposes of the retaliatory transfer allegations in Claims 3 and 4. If Plaintiff

## C. Claim 5: Retaliatory Search and Confiscation of Property

Plaintiff alleges that Officer Oliver searched his cell and confiscated his property in retaliation for filing grievances. Doc. 9 at 17-18. On March 28, 2017, Plaintiff was gone for the entire day on a visit to the medical unit. Id. at 17. Plaintiff alleges that while he was gone, Officer Oliver searched his cell and seized his personal property, including grievances and legal work. Id. Plaintiff attached to the Amended Complaint a list of items that he claims were taken, including a pair of Nike shoes, ear buds, sunglasses, navy mesh shorts, and 200 pages of legal work. Doc. 9-4 at 6 (Am. Compl. Ex. 5). Two days after the cell search, on March 30, 2017, Plaintiff was transferred to Marion C.I. Doc. 9 at 17-18. Plaintiff alleges that the search was in retaliation for a grievance he filed with the Secretary of the FDOC. Id. at 17. Plaintiff does not explain how he knows or why he believes Officer Oliver was the one who searched his cell, given that Plaintiff was admittedly absent when the search occurred. Plaintiff also does not describe how he knows or why he believes that Officer Oliver – if he did conduct the cell search – did so in retaliation for filing a grievance.

Officer Oliver submitted a declaration in support of summary judgment. Officer Oliver states in pertinent part:

---

so intended, however, the result would be the same. It is equally uncontested that Officer Oliver had no authority to make or recommend any transfer decisions regarding an inmate. Doc. 56-4 at ¶ 5 (Def. S.J. Ex. D, Oliver Declaration).

3. It has come to my attention that through the filing of Plaintiff's current lawsuit that I am accused of improperly searching Plaintiff's belongings during the month of March 2017. I do not remember searching Plaintiff's belongings, however, if I did in fact conduct a search of Plaintiff's belongings, I did so in a manner which was proper an[d] appropriate. I did not take possession of, damage, or otherwise destroy Plaintiff's property. I do not currently have any of Plaintiff's property and never took possession of Plaintiff's property. It should be noted however, that inmates are subject to search at any time. See § 33-602.204, Fla. Admin. Code. See also § 33-602.203, Fla. Admin. Code.

4. It has come to my attention that I am also accused of threatening Plaintiff with retaliation either by transferring him to a different institution or with discipline for writing grievances. This is simply not true. I never threatened Plaintiff with any kind of adverse action. I understand that Plaintiff and other inmates have the right to file grievances to make complaints about my or other officers' behavior and to obtain appropriate relief when requested. I do not hold it against inmates who file grievances and recognize that grievances or inmate requests filed by inmates are part of my job and responsibility as a corrections officer. I have always treated inmates with the same degree of respect that I would treat any other individual with.

Doc. 56-4 at ¶¶ 3, 4. Officer Oliver argues he is entitled to summary judgment because "Plaintiff does not allege that Defendant Oliver damaged, destroyed, or currently possesses Plaintiff's property. Rather, it appears that Plaintiff complains about the search conducted by Oliver which allegedly resulted in Plaintiff's property being transferred [to Marion C.I.] ahead of Plaintiff." Doc. 56 at 10.

In his Second Amended Response and attached declaration, Plaintiff maintains that Officer Oliver searched his cell and took his property in retaliation for filing a grievance. Doc. 80 at 11-13; Doc. 80-5 at ¶¶ 10, 11. However, Plaintiff offers only conclusory allegations that Officer Oliver had a retaliatory motive for doing so. Doc. 80 at 3, 11-13, 16-17, 19-20; Doc. 80-5 at ¶¶ 10, 11. Plaintiff refers only to his own grievances and Amended Complaint to support his allegation of a retaliatory animus.

Attached to the Amended Complaint are exhibits relevant to this claim. The record shows that Plaintiff filed a grievance and an administrative appeal about the alleged search and removal of personal property. Doc. 9-1 at 2-4 (Am. Compl. Ex. 1A – 1C).[19] Plaintiff claimed that on March 28, 2017, while attending a medical appointment, several items of property were removed from his cell, and that he was transferred two days later to another prison. Doc. 9-1 at 4. Plaintiff did not identify Officer Oliver as the officer responsible. In April 2017, Officer F. Johns denied the grievance, explaining:

> Your grievance was reviewed and denied. Attached is your receipt for personal property in which you signed agreeing that you received it all before you left Putnam C.I.

Id. Also attached to the Amended Complaint is the receipt for Plaintiff's

---

[19]     Confusing matters, Plaintiff refers in his Amended Complaint to another grievance he filed at Marion C.I. regarding a different cell search. Doc. 9 at 18 (citing, inter alia "Exh. 3."). In that grievance, Plaintiff alleged that on May 12, 2017, officers at Marion C.I. also searched his cell and confiscated his property. Doc. 9-3 at 2.

property, dated March 30, 2017 – two days after the alleged search and confiscation. Doc. 9-2 at 6-7. The receipt catalogs 28 categories of personal items, including shorts, earbuds, composition books, writing pads, legal mail, and personal mail. The receipt shows that Plaintiff requested that each item be returned to him, that each item was returned to Plaintiff (designated by code "R"), that Plaintiff initialed next to each item to confirm that it was returned to him, and that Plaintiff signed the form. Id.[20] No items are listed as missing.

As noted earlier, a prisoner must show three things to prevail on a retaliation claim. He must show that (1) his speech was constitutionally protected; (2) he suffered adverse action that would likely deter a person of ordinary firmness from engaging in such speech; and (3) "there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." O'Bryant, 637 F.3d at 1212. Inmates have no expectation of privacy against searches of their property. Hudson v. Palmer, 468 U.S. 517, 525-26 (1984); see also Fla. Admin. Code § 33-602.203(9)(a) ("All cells, lockers, dormitories and other areas of an institution may be searched in a reasonable manner at any time."). Nevertheless, a search and seizure of property undertaken for the purpose of chilling an inmate's exercise of his First Amendment rights qualifies as unlawful retaliation. See Harris v. Ostrout, 65

---

[20]    Plaintiff also attached two packing slips to his Amended Complaint, but they are dated 2016 and therefore are not informative. Id. at 3, 9.

F.3d 912, 915-16 (11th Cir. 1995) (while prisoners have no expectation of privacy against strip searches, prison officials may not undertake such searches to chill an inmate's right of access to the courts).

Officer Oliver is entitled to summary judgment because Plaintiff cannot show that Officer Oliver took or damaged his property, and even if he did, that he had a retaliatory motive. In his declaration, Officer Oliver states that he does not recall searching Plaintiff's cell, but if he did, he denies taking, damaging, or destroying any of Plaintiff's possessions. Doc. 56-4 at ¶ 3. Officer Oliver further denies engaging in any type of retaliatory discipline. Id. at ¶ 4. Thus, Officer Oliver has discharged his burden of "citing to particular parts of materials in the record, including … declarations" showing that a fact cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). As such, Plaintiff must "go beyond the pleadings, and by [his] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).

Plaintiff has not met that burden for three reasons. First, Plaintiff has offered no facts – either in his Amended Complaint, Second Amended Response, or declaration – to support his allegation that Officer Oliver was the individual who searched his cell. Plaintiff's allegation is not based on personal knowledge because, according to his Amended Complaint, he was away from his cell when

30

the search occurred. Doc. 9 at 17. "Unsupported factual allegations, affidavits based on information and belief instead of personal knowledge, and mere conclusions are insufficient to withstand a motion for summary judgment." Sears v. Warden, Okeechobee Corr. Inst., 762 F. App'x 910, 914 (11th Cir. 2019) (citing Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005)); see also Fed. R. Civ. P. 56(c)(4). Plaintiff's assertion that Officer Oliver was responsible for the search is based only on information and belief, as he points to no facts to support his allegation. Second, the record refutes Plaintiff's allegation that any property was taken from him during the March 28, 2017, cell search. According to the property receipt dated March 30, 2017, which Plaintiff signed and initialed, each of Plaintiff's personal items were accounted for and returned to him. Doc. 9-1 at 4; Doc. 9-2 at 6-7. Maldonado v. Unnamed Defendant, 648 F. App'x 939, 953 (11th Cir. 2016) (affirming dismissal of inmate's retaliatory taking claim where the record showed that "all of Maldonado's items were returned or replaced, and Maldonado signed acknowledgements so stating."). Third, Plaintiff offers no facts or evidence – other than his own conclusory allegations – that Officer Oliver had a retaliatory motive for searching Plaintiff's cell (even assuming Officer Oliver did so). However, conclusory allegations of a retaliatory animus are insufficient to withstand a motion for summary judgment. O'Bryant, 637 F.3d at 1219 (affirming grant of summary judgment to two defendants where plaintiff failed to present any evidence of a retaliatory

animus); <u>Harris</u>, 65 F.3d at 916 (affirming grant of summary judgment where plaintiff "produced nothing, beyond his own conclusory allegations, suggesting that Collins's actions in compliance with the strip search regulations were motivated by a retaliatory animus."); <u>Moulds v. Bullard</u>, 345 F. App'x 387, 393-94 (11th Cir. 2009) (affirming summary judgment where plaintiff "made only a bare assertion of a conspiracy to retaliate against him, without alleging any other details or providing any supporting evidence of such a conspiracy…."). Accordingly, Officer Oliver is entitled to summary judgment.

To the extent Plaintiff alleges a taking of property, he is not entitled to relief under 42 U.S.C. § 1983. "A state prisoner … does not have a Fourteenth Amendment due process claim for the intentional deprivation of his property, provided that a meaningful post-deprivation remedy is available." <u>Smith</u>, 562 F. App'x at 817 (citing <u>Hudson</u>, 468 U.S. at 533). "The state remedy does not need to allow recovery to the same extent that a § 1983 suit would in order to be meaningful." <u>Id.</u> (citing <u>Hudson</u>, 468 U.S. at 535). The Eleventh Circuit has held that Florida provides a meaningful post-deprivation remedy because "Florida has expressly waived state sovereign immunity for tort suits involving, <u>inter alia</u>, loss of property caused by state employees or agents acting within the scope of their employment." <u>Weaver v. Geiger</u>, 294 F. App'x 529, 533 (11th Cir. 2008) (citing Fla. Stat. § 768.28(1) (2008)). Thus, Plaintiff may not use § 1983 to recover for the loss of personal items.

## D. Claims 6 and 7: Alleged Statutory Violations

Finally, Plaintiff alleges that Officer Cardigan violated his rights under the Eighth and Fourteenth Amendments by violating state and federal statutes during the repainting of the dormitory. The factual basis for Claims 6 and 7 is the same as for Claims 1 and 2. In Claim 6, Plaintiff alleges that Officer Cardigan violated Plaintiff's rights under the Fourteenth Amendment's Due Process Clause because his conduct violated Florida's fire prevention code, § 633.206(3), Fla. Stat. Doc. 9 at 18. In Claim 7, Plaintiff alleges that Officer Cardigan's repainting of the dormitory also constituted deliberate indifference under the Eighth Amendment because his actions violated the Clean Air Act, 42 U.S.C. § 7401, et seq. Doc. 9 at 18.

As for Claim 6, Plaintiff cannot bring a private cause of action under Florida Statute Section 633.206(3) because that statute does not create and was not intended to provide a private cause of action. The statute reads:

> (3) In establishing the uniform firesafety standards and the minimum firesafety standards, as required by s. 394.879, the department shall consider types of construction materials and their flame spread and smoke characteristics, occupancy levels, means of egress, special hazard protection, smoke barriers, interior finish, and fire protection systems or equipment and occupancy features necessary to minimize danger to life from fire, smoke, fumes, or panic. In considering these factors, the department shall develop minimum standards which are reasonably prudent with respect to protecting life, safety, and property.

Fla. Stat. § 633.206(3). This statute does not expressly provide any person or party with a private remedy that would allow for enforcement of its provisions. Nor is a private right of action implied. Legislative intent is "the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." Murthy v. N. Sinha Corp., 644 So. 2d 983, 985 (Fla. 1994) (citations omitted); accord Love v. Delta Air Lines, 310 F.3d 1347, 1351-52 (11th Cir. 2002) ("Since the late 1970s, the Supreme Court has gradually receded from its reliance on three of the[ ] four [Cort v. Ash][21] factors, focusing exclusively on legislative intent to create a private right of action as the touchstone of its analysis." (emphasis in original)). However, "[t]here is no evidence in the language of [§ 633.206] or the statutory structure that a private cause of action … was contemplated by the legislature in enacting this statute." Murthy, 644 So. 2d at 986. "Rather, the language of [§ 633.206] indicates that it was created merely to secure the safety and welfare of the public by regulating" fire safety standards. Id.

To the extent Plaintiff claims that a violation of § 633.206(3) violates the Fourteenth Amendment's due process clause, his claim fares no better. "In prison cases, … the Supreme Court has been conspicuously reluctant to recognize state laws as creating rights protected by the federal constitution."

---

[21]    Cort v. Ash, 422 U.S. 66, 78 (1975), departed from by Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 24 (1979) ("The dispositive question remains whether Congress intended to create any such remedy.").

Edwards v. Gilbert, 867 F.2d 1271, 1274 (11th Cir. 1989) (citing Hewitt v. Helms, 459 U.S. 460, 467-70 (1983)). "The Court has recognized such rights only where the state has used mandatory language to specify procedures which must be used or findings which must be made before benefits are taken away or burdens are placed on individual prisoners." Id. (citations omitted). Because § 633.206 is devoid of such "mandatory language," the Florida statute does not provide Plaintiff with a Fourteenth Amendment claim.

As for Claim 7, Plaintiff's allegation that Officer Cardigan was deliberately indifferent for violating the Clean Air Act adds nothing to the claims for deliberate indifference in Claims 1 and 2. As discussed regarding Claims 1 and 2, no jury could find that Officer Cardigan displayed deliberate indifference to Plaintiff's safety during the repainting of the dormitory. Additionally, Plaintiff does not have a private cause of action under the federal Clean Air Act, 42 U.S.C. § 7401, et seq. "The Act does not authorize a private cause of action for damages when a prisoner alleges that he was exposed to contaminants which caused respiratory problems." Robbins v. Jordan, No. 5:14-cv-95-HL-MSH, 2014 WL 1314939, at *4 (M.D. Ga. Mar. 31, 2014). "Because there is not any private right of action under the Clean Air Act, … plaintiff's

position lacks merit." <u>Powell v. Lennon</u>, 914 F.2d 1459, 1462 n.7 (11th Cir. 1990). Accordingly, Defendants are entitled to summary judgment on Claim 7.[22]

## E. Qualified Immunity, Physical Injury, and Equitable Relief

Defendants have argued that they are entitled to qualified immunity. Doc. 56 at 5-8. "Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). "To receive qualified immunity, the officer must first show that he acted within his discretionary authority," <u>Lewis v. City of West Palm Beach, Fla.</u>, 561 F.3d 1288, 1291 (11th Cir. 2009) (citation omitted), something not in dispute here. "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." <u>Id.</u> To overcome qualified immunity, Plaintiff must show both that: (1) the defendants violated a constitutional right, and (2) this right was clearly established. <u>Holloman ex rel.</u>

---

[22] In his Second Amended Response, Plaintiff also argues that he has a class-of-one equal protection claim. Doc. 80 at 21. However, Plaintiff did not include such a claim in the Amended Complaint's statement of claims. Doc. 9 at 14-19. At most, Plaintiff made a passing, conclusory allegation of an equal protection violation under the "injuries" section of the Amended Complaint, Doc. 9 at 22, which is not enough to raise a claim. A plaintiff may not add new claims or amend his complaint in a brief opposing summary judgment. <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1314-15 (11th Cir. 2004).

Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). A court has the discretion to decide in what order to address these two prongs. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

The Court has determined that neither Defendant violated Plaintiff's constitutional rights. Because "[n]o constitutional violation occurred … [the Court] need not assess whether the alleged violation was clearly established." Garczynski v. Bradshaw, 573 F.3d 1158, 1170 (11th Cir. 2009). Thus, the Court need not address qualified immunity any further.

Likewise, the Court need not decide whether Plaintiff suffered more than a de minimis physical injury for purposes of recovering compensatory or punitive damages under 42 U.S.C. § 1997e(e). Because neither Defendant violated Plaintiff's rights, Plaintiff is not entitled to damages.

Finally, Plaintiff is not entitled to declaratory or injunctive relief either. See Doc. 9 at 13, 19. "[A] traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed – if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1098 (11th Cir. 2004). Because Officer Cardigan and Officer Oliver did not violate Plaintiff's constitutional rights, he is not entitled to injunctive or declaratory relief against them.

Accordingly, based on the foregoing discussion, it is hereby **ORDERED:**

1.  Defendants' Motion for Summary Judgment (Doc. 56) is **GRANTED**.

2.  The Clerk shall enter judgment in favor of Defendants, Charles Cardigan, Jr., and Thomas Oliver, and against Plaintiff Christopher Dyal.

3.  The Clerk shall thereafter terminate any pending motions and close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of March, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se plaintiff